UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **08-21005-MC-SEITZ/O'SULLIVAN**

In Re:  Request for International Judicial    )
Assistance from the 11ᵗʰ Family and Probate )
Division of the Central District Court of Sao )
Paulo, Brazil; Matter of Mr. James Smith,    )
c/o HSBC International Bank, 1441 Brickell )
Avenue, Floor 17, Miami, FL 33131            )
_____/



FILED by _VK_ D.C.
ELECTRONIC

**APR. 14, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## APPLICATION FOR ORDER PURSUANT TO TITLE 28,
## UNITED STATES CODE, SECTION 1782

The United States of America, through counsel, petitions this Court for an Order pursuant

to 28 U.S.C. §1782 appointing Wendy A. Jacobus, Assistant United States Attorney, as

Commissioner for the purpose of obtaining evidence from witnesses present within the jurisdiction

of this Court and taking other action as required in execution of the attached letters rogatory issued

by the 11ᵗʰ Family and Probate Division of the Central District Court of Sao Paulo, capital city of the

State of Sao Paulo, Federative Republic of Brazil; Matter of Mr. James Smith, c/o HSBC

International Bank, 1441 Brickell Avenue, Floor 17, Miami, Florida 33131.   The documents

submitted to the Department of Justice by the 11ᵗʰ Family and Probate Division of the Central

District Court of Sao Paulo, Brazil are attached hereto as Exhibit No. 1.   A memorandum of law has been filed in support of this application.

Dated: April 14, 2008
Miami, Florida

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By:

Wendy A. Jacobus
Assistant U.S. Attorney
Assigned No. A5500028
99 N.E. 4th Street
Third Floor/Civil Division
Miami, Florida 33132-2111
Tel. (305) 961-9301
(Fax No. (305) 530-7139)
E:mail: wendy.jacobus@usdoj.gov
Attorney for United States

2



PODER JUDICIÁRIO
Comarca de São Paulo – Foro Central Cível
11ª Vara da Família e Sucessões
11º Ofício da Família e Sucessões
Pça João Mendes Junior s/nº. 5º andar – salas 520/526
Centro – CEP 01501-900
São Paulo/SP – Tel. 2171-6055
**PROCESSO Nº 583.00.2005.055111-7**

Providencie-se
São Paulo,

### **CARTA ROGATÓRIA**

Processo nº : 2005.055111-7
Ação        : ARROLAMENTO DE BENS
Requerente : ELIZABETH REGINA GOMES NEVES HODARA
Requerido  : HELIO HODARA

**JUÍZO ROGANTE: Juízo de Direito da 11ª Vara da Família e Sucessões, do Foro Central da Comarca da Capital do Estado de São Paulo, República Federativa do Brasil.**

**JUÍZO ROGADO: Ao Juízo Competente da Florida, Estados Unidos, ou a quem suas vezes fizer e o conhecimento desta deva pertencer.**

A Doutora CECÍLIA PINHEIRO DA FONSECA AMENDOLARA, Meritíssima Juíza de Direito da 11ª Vara da Família e Sucessões da Comarca da Capital do Estado de São Paulo, República Federativa do **BRASIL,** *FAZ SABER* À **EGRÉGIA JUSTIÇA DA CORTE DISTRITAL DOS ESTADOS UNIDOS – DISTRITO DO SUL DA FLORIDA - DIVISÃO MIAMI – CASO # 06-20729 CIV LENARD,** que perante este Juízo se processam regularmente os atos e termos da ação de ARROLAMENTO DE BENS, entre as partes acima mencionadas, tudo de conformidade com as peças que seguem, as quais ficam fazendo parte integrante desta rogatória.

**FINALIDADE: PARA A OITIVA DO SR. JAMES SMITH,** gerente do HSBC PRIVATE BANK INTERNACIONAL, Private Bank Officer, 1441 Brickell Av. Floor 17, Miami, Florida, 33131, (305) 539-4700, Estados Unidos da América, dos quesitos formulados.

**ADVOGADO: (autor)** MOACIR AVELINO MARTINS, 71108; RICARDO A. H. PACE, OAB. 182632; **(requerido)** DENISE FERRAGE HUNGRIA OAB. 206934;

**Exhibit 1**

PENGAD 800-631-6989



PODER JUDICIÁRIO
Comarca de São Paulo - Foro Central Cível
11ª Vara da Família e Sucessões
11º Ofício da Família e Sucessões
Pça João Mendes Junior s/nº, 5º andar - salas 520/526
Centro - CEP 01501-900
São Paulo/SP - Tel. 2171-6055

**PROCESSO Nº 583.00.2005.055111-7**

**Pessoa indicada para recolher os valores devidos:** advogado MR. BILL ULLMAN, com endereço na 5120 Wachovia Financial Center, 200 South Biscayne Boulevard, Miami, Fl 33131, E-MAIL: Bill@billullman.com.

### ENCERRAMENTO

Assim, pelo que dos autos consta, expediu-se a presente, na qual roga a Vossa Excelência que, após exarar o seu respeitável *"CUMPRA-SE"*, se digne determinar as diligências para o seu inteiro cumprimento, com o que estará prestando relevantes serviços à Justiça, garantindo a autoridade expedidora reciprocidade nos limites que a legislação brasileira e os tratados pertinentes permitirem. Dada e passada nesta cidade e Comarca da Capital do Estado de São Paulo, em 8 de março de 2007. Eu, _____ (Lucia Michie Kawakami), Escrevente Técnico Judiciário, lavrei a presente. Eu, _____ (Armando Carlos Lenza Stein), Diretor de Divisão, conferi e subscrevo.


CECÍLIA PINHEIRO DA FONSECA AMENDOLARA
Juíza de Direito


*CERTIDÃO: Certifico ser autêntica a assinatura da Drª CECÍLIA PINHEIRO DA FONSECA AMENDOLARA, Juíza de Direito da 11ª Vara da Família e das Sucessões. Eu, _____ (Bel. Armando Carlos Lenza Stein), Diretor de Divisão, conferi e subscrevo.*



**Rita de Cássia Teixeira**
Tradutora Pública Juramentada e Intérprete Comercial
para os idiomas Inglês e Português
Matrícula JUCESP n.º 1618          CPF/MF n.º 089.545.738-51
CCM n.º 2.942.180-2                       INSS n.º 1137.4250.907
Rua Marcos Lopes 132, apto 43 - CEP 04513-080 São Paulo/SP
Tel./Fax 3845 5152                          e-mail: ritapk@hotmail.com

Tradução n. º 283                 Livro n.º 003                 Fl. n.º 044
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
I, the below signed Sworn Translator for the English and Portuguese languages, CERTIFY
this to be a faithful translation from Portuguese into English of a document received on this
date.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[coat of arms        JUDICIARY POWER
of the       District Court of São Paulo – Central Civil District Court
State of       11th Family and Probate Division
Sao Paulo]       11th Family and Probate Office
Praça João Mendes Júnior s/nº , 5ºandar – salas 520/526
Centro – CEP 01501-900
São Paulo/SP – Phone: 2171-6055
**DOCKET # 583.00.2005.055111-7**


## LETTER ROGATORY

Docket number:        2005.055111-7
Suit:            ATTACHMENT OF ASSETS
Plaintiff:        ELIZABETH REGINA GOMES NEVES HODARA
Defendant:        HÉLIO HODARA

**REQUESTING COURT: 11th Family and Probate Division of the Central District
Court of Sao Paulo, capital city of the State of São Paulo, Federative Republic of
Brazil.**

**REQUESTED COURT: To the Appropriate Judicial Authority of the State of
Florida, United States of America, or other competent authorities to whom these
presents shall come.**

Justice CECÍLIA PINHEIRO DA FONSECA AMENDOLARA,
Honorable Judge of the 11th Family and Probate Division of the District Court of Sao
Paulo, capital city of the State of São Paulo, Federative Republic of **BRAZIL**, MAKES
KNOWN to the **UNITED STATES DISTRICT COURT –  SOUTHERN DISTRICT OF
FLORIDA – MIAMI DIVISION – CASE # 06.20729 CIV LENARD**, that the civil
proceeding for ATTACHMENT OF ASSETS between the above-mentioned parties is
being regularly processed before this Court, in accordance with the documents hereto
attached, constituting an integral part of this letter rogatory.

**NATURE OF REQUEST: COMPULSION OF TESTIMONY** OF MR. JAMES SMITH,
manager of HSBC PRIVATE BANK INTERNACIONAL, Private Bank Officer, 1441
Brickell Av, Floor 17, Miami, Florida, 33131, (305) 539-4700, United States of
America, to answer this Court's questions.

**COUNSEL: (plaintiff)** MOACIR AVELINO MARTINS, 71108; RICARDO A. H. PACE,
OAB. 182632; **(defendant)** DENISE FERRAGE HUNGRIA, OAB. 206934;

Tradução n. ° 283        Livro n.° 003        Fl. n.° 045

JUDICIARY POWER
District Court of São Paulo – Central Civil District Court
11th Family and Probate Division
11th Family and Probate Court
Praça João Mendes Júnior s/n° . 5°andar – salas 520/526
Centro – CEP 01501-900
São Paulo/SP – Phone: 2171-6055
**DOCKET # 583.00.2005.055111-7**

**Designated person to collect the due costs:** MR. BILL ULLMAN, attorney-at-law, with address at 5120 Wachovia Financial Center, 200 South Biscayne Boulevard, Miami, Fl 33131, E-MAIL: Bill@billullman.com

## CLOSING

Therefore, according to the judicial records, the present document was issued respectfully requesting Your Honor to execute this letter rogatory, and, upon thus complying herewith, your Honor will render services to Justice and to me a favor, which, on the other hand, I shall render whenever I receive Letters Rogatory from Your Honor, to the extent permitted by Brazilian law and pertinent treaties. Given and issued in this capital city and Court of Sao Paulo, State of Sao Paulo, on March 8, 2007. I [illegible] (Lucia Michie Kawakami), Technical Judicial Clerk, have transcribed the present instrument. I [illegible] (Armando Carlos Lenza Stein), Division Director, having found it correct, set my hand hereto.

[signature]
CECÍLIA PINHEIRO DA FONSECA AMENDOLARA
Judge

AUTHENTICATION: I certify as true the signature of Judge CECÍLIA PINHEIRO DA FONSECA AMENDOLARA, Honorable Judge of the 11th Family and Probation Division. I [illegible] (B. Armando Carlos Lenza Stein), Division Director, have found it correct and set my hand hereto.

*****************************************************************************************
***NOTHING ELSE*** contained the above document, which I return together with this full translation n.283, book n. 3, pages 044/ 045.

***IN WITNESS THEREOF*** I have hereunto set my hand in this capital city of:
*****************************************************************************************

Fees: R$ 86,00
Receipt n. : 092/2007

São Paulo, 14 de maio de 07
RITA DE CASSIA TEIXEIRA
Tradutora Juramentada e Intérprete Comercial Inglês - Português
Matriculada na JUCESP sob n° 1618

Vanete Pereira Gama
stituta

ORGÃO - 28° SUBDISTRITO DE JARDIM PAULISTA

Reconheço por semelhança a firma de: RITA DE CASSIA TEIXEIRA.
São Paulo, 15 de maio de 2007.
Em testemunho da verdade.
Válido somente com selo de autenticidade.
Preço por firma R$ 2,65 | Total R$ 2,65 | (20070515164559/04)

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA

PRISCILA M. P. CORRÊA DA FONSECA          PAULO CARVALHO CAIUBY
CARLA FALCONE BRAGAGLIA                   CAROLINA SCATENA DO VALLE
FERNANDA VILLARES MATTA                   ELEONORA  G. SALTÃO DE Q. MATTOS
JULIANA VIEIRA DA ROCHA                   JOSE EXPEDITO  DE OLIVEIRA JUNIOR

Excelentíssimo Senhor Doutor Juiz de Direito da 11ª Vara da Família e das Sucessões do Foro Central da Comarca da Capital

**URGENTE**

       **ELIZABETH REGINA GOMES NEVES HODARA**, brasileira, casada, portadora da Cédula de Identidade RG n.º 6152549-2, inscrita no CPF/MF sob o n.º 989.384.448-72, atualmente residindo, provisoriamente, no apartamento que serve de morada ao seu filho, situado na Rua da Consolação nº 3563, apto. 151, por suas advogadas (Doc. 01), vem, em caráter incidental, com fundamento na previsão contida no artigo 855 e seguintes do Código de Processo Civil, promover a presente

## MEDIDA CAUTELAR DE ARROLAMENTO DE BENS
## COM PEDIDO URGENTE DE LIMINAR

contra **HELIO HODARA**, brasileiro, casado, empresário, inscrito no CPF/MF sob nº 011.184.128-34, residente e domiciliado nesta Capital do Estado de São Paulo, na Rua Artur Ramos nº 339, apto. 221, o que faz pelos motivos e para os fins a seguir aduzidos.

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



- I -
**A ESPÉCIE**

**A) Dos fatos pretéritos**

1. A Suplicante começou a namorar o Suplicado no início de 2001, sendo certo que no final daquele mesmo ano o Sr. Helio passou a fazer frente a todos os dispêndios da Sra. Elizabeth. No mês de maio de 2002 as partes passaram a residir sob o mesmo teto, no imóvel que anteriormente servia de residência apenas ao Suplicado, situado no Condomínio Santa Helena, no Bairro Alto da Boa Vista.

2. Após 4 (quatro) meses de convivência comum, a Suplicante contraiu matrimônio com o Suplicado, mais especificamente aos 20 de setembro de 2.002, conforme assento lavrado perante o 20º Cartório de Registro Civil de São Paulo, Sub-distrito Jardim América (Livro nº B-061, Fls. 117, termo nº 14.118), pelo regime da separação total de bens, conforme escritura de Pacto Antenupcial lavrada no 27º Tabelião de Notas da Capital, em 19 de abril de 2002 (pág. 111, livro 1415) (Doc. 02/03). Da referida união não adveio o nascimento de filhos.

3. Não obstante o relacionamento das partes tenha transcorrido, no início, em razoável harmonia, o certo é que, em razão de reprovável conduta adotada pelo Suplicado, a convivência conjugal revelou-se bastante conturbada, tornando inviável o convívio comum.

4. Dessa forma, Exa., diante do insustentável clima criado no seio da família pelo varão, a Suplicante houve por bem deixar o lar conjugal, aos 04 de março pp., tendo promovido, perante esse MM. Juízo, a competente medida cautelar de separação de corpos, a fim de que fosse **regularizada a separação de fato já existente, provimento esse concedido _inaldita altera parte_ por V. Exa.** (Docs. 04/05).

AV. MAJOR SILVIO MAGALHÃES PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

PRISCILA M. F. CORRÊA DA FONSECA
ADVOCACIA



5. A reprovável conduta adotada pelo Suplicado acarretou, destarte, a falência do matrimônio das partes, de modo que outra solução não se apresentou à Suplicante senão a proposição da competente ação de separação judicial, por meio da qual pretende obter o decreto da separação judicial do casal, por culpa exclusiva de seu consorte (Doc. 06).

**B) Do indelegável direito da Suplicante à partilha dos bens comuns (*fumus boni iuris*)**

6. Postulou a Suplicante nos autos de sua separação judicial a partilha dos bens comuns do casal, uma vez que, não obstante tenham casado sob regime da separação convencional de bens, a verdade é que, diante da omissão existente no pacto antenupcial firmado, tem a Suplicante direito aos **frutos** e **rendimentos** dos bens do Suplicado (aplicações financeiras etc.), percebidos durante o casamento.

7. E tudo porquanto, estabelece o artigo 259 do Código Civil de 1916 - aplicável à espécie, de acordo com a redação constante do artigo 2.039[1] do novo Código Civil -, que "*Embora o regime não seja o da comunhão de bens, prevalecerão, __no silêncio do contrato__, os princípios dela quanto à comunicação dos adquiridos na constância do casamento*". Dessa forma, quando não houver convenção expressa no pacto antenupcial, vigorarão os princípios legais da comunhão de bens.

8. Portanto, a Suplicante detém inequívoco direito aos **frutos** e **rendimentos** dos bens do Suplicado durante o interregno em que perdurou o seu casamento, eis que, no regime da comunhão de bens, estabelece o artigo 265 do antigo Código Civil, que "*a incomunicabilidade dos bens enumerados no artigo 263 não se lhes estende aos frutos, quando se percebam ou vençam durante o casamento*".

9. Denota-se inegável, pois, o direito da Suplicante sobre os **frutos** e **rendimentos** dos bens de titularidade do Suplicando no período em que perdurou o seu matrimônio, *ex vi* da disposição contida no artigo 265 da lei Civil de 1916.

---

[1] "O regime de bens nos casamentos celebrados na vigência do Código Civil anterior, Lei n. 3.071, de 1º de janeiro de 1916, é o por ele estabelecido" (artigo 2.039).

AV. MAJOR SILVIO MAGALHÃES PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077



10. Neste diapasão, esclarece ARNOLDO WALD que *"No direito brasileiro, até a entrada em vigor do Código Civil de 2002 , a separação somente seria absoluta, plena e total se houvesse cláusula expressa no pacto antenupcial prevendo que a separação abrangeria não só os bens presentes, como também os futuros e **respectivos frutos e rendimentos**"* (in O Novo Direito de Família, 15ª edição, ed. Saraiva, São Paulo, 2004, p. 122, n.g.).

11. Daí porque, aliás, esclarece WASHINGTON DE BARROS MONTEIRO que *"**A incomunicabilidade dos bens não se estende aos frutos, quando se percebem ou se vencem durante o casamento (Cód. Civil, art. 265). A incomunicabilidade constitui exceção. A regra é a comunicabilidade entre os cônjuges de todos os bens, principais e acessórios. Trata-se de assunto em que vigora a interpretação restritiva; portanto, na falta de estipulação em contrário, não são incomunicáveis os frutos e rendimentos dos bens vinculados de incomunicabilidade e auferidos na constância do casamento. Os frutos sempre se comunicam, ainda que o regime matrimonial seja o da separação**"* (in Curso de Direito Civil, ed. Saraiva, São Paulo, 1997, 34 ed. p. 173, n.g.).

12. A jurisprudência pátria, aliás, não discrepa do entendimento no sentido de que se comunicam os bens quando nada consta ao contrário no contrato antenupcial: *"Quanto à comunicação dos bens adquiridos na constância do casamento, se o contrato antenupcial silencia, **não há como impedir a comunicabilidade dos aquestos**"* (TJRS, Ap. nº 593041478, rel. Des. Waldemar Luiz de Freitas Filho, j. 22.12.93).

13. Denota-se inegável, pois, o direito da Suplicante sobre os **frutos** e **rendimentos** dos bens de titularidade do Suplicando no período em que perdurou o seu matrimônio.

14. E, sendo inconteste o direito da Suplicante à partilha dos bens comuns, impõe-se a concessão do provimento acautelatório ora requerido, a fim de que seja assegurado o resultado útil da demanda principal. É que, como se demonstrará a seguir, o Suplicado pode, com facilidade, dilapidar o acervo do casal.

## C) Da existência, na espécie, do *periculun in mora*

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



15. Teme a Suplicante que até a separação definitiva do casal, por puro espírito emulativo, venha o Suplicado a dilapidar o patrimônio comum, ocultar ou gravar os bens que pertencem ao casal, que são, na maioria, aplicações financeiras de vulto. Tudo, Exa., com o repulsivo propósito de prejudicar a esposa por ocasião da inevitável partilha do acervo comum.

16. E tal circunstância denota-se ainda mais evidenciada quando se atenta para o fato de que, recentemente, o Suplicado asseverou à esposa que nada, absolutamente nada, lhe caberia com o fim do casamento, tendo, inclusive, se negado a devolver à esposa alguns bens de sua exclusiva titularidade (jóias, documentos particulares, dinheiro em espécie etc.) que ainda se encontram no imóvel que servia de lar conjugal ao casal.

17. Ademais, teve a mulher, recentemente, conhecimento de que o Sr. Helio se dirigiu aos Estados Unidos da América para desviar todo o numerário de sua titularidade, mantido junto às instituições financeiras daquele país, para uma nova *off shore*, denominada Finvestor, com sede nas ilhas virgens e registro nº IBC646400, que foi aberta no dia 15 de março pp. Aliás, Exa., a comprovar o reprovável intuito de o Suplicado deixar a mulher à mingua, insta consignar que sequer o valor arbitrado a título de pensão alimentícia em favor da Sra. Elizabeth vem sendo quitado pelo varão

18. O fundado temor da Suplicante, portanto, encontra respaldo no fato de que a maior parte dos bens que compõe o acervo comum - **substancial numerário em conta-corrente e aplicações financeiras no Brasil e no Exterior – é de facílima dilapidação e se encontra formalmente em nome exclusivo do Sr. Helio** – anote-se que em apenas uma de suas contas, no Brasil, SÓ NO MÊS DE DEZEMBRO de 2004, foram depositados nada mais nada menos que R$ 84.450,00, sendo que em outra, mantida junto ao Banco Safra, teve ainda o Suplicado, no mesmo mês, um saldo médio de R$ 46.000,00 (quarenta e seis mil reais –Doc. 07) - **ou de suas *off shore*, com sede em paraísos fiscais.**

19. É que, quando já detentor de verdadeira fortuna, o Suplicado resolveu se "aposentar" e vendeu sua considerável participação societária na empresa FRED CONFECÇÕES LTDA., constituindo, com o milionário numerário advindo de tal alienação, um *trust* fora do País, no qual suas duas filhas do primeiro casamento serão beneficiadas, por ocasião de sua morte, com o nada módico montante de **US$ 700.000,00 (setecentos mil**

AV. MAJOR SILVIO MAGALHÃES  PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

11 of 49



PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA

**dólares americanos)** por ano para cada uma. Dessa forma, atualmente, a maior parte do capital do Suplicado encontra-se aplicado fora do país.

20. Com efeito, Exa., o **MILIONÁRIO** patrimônio do Suplicado, já estimado em mais de U$ 40.000.000,00 (quarenta milhões de dólares) por ocasião da realização de sua separação da Sra. Janete, sua ex-mulher (Doc. 08), consiste, basicamente, em aplicações financeiras de vulto.

21. Daí porque, Exa., diante da inequívoca possibilidade de extravio do patrimônio, denota-se necessário o bloqueio dos bens que compõe o acervo das partes. Sucede, contudo, que, conforme adiante se demonstrará, grande parte do referido numerário não se acha formalmente em nome do Suplicado, mas sim de empresas, com sede no exterior, por ele constituídas nos últimos anos.

## D) da confusão patrimonial

22. Os documentos ora colacionados aos autos atesta que, nestes últimos anos, o Agravado constituiu duas *off shores,* a **STARKMAN INVESTEMENTS LTD.**, com sede nas Ilhas Virgens, e a **DOLL INVESTMENTS LTD**, com sede em Cyman Islands, dois paraísos fiscais (Doc. 09).

23. E, para que V. Exa. possa vislumbrar a veracidade desta alegação, basta que proceda à análise da anexa documentação – **faxes assinados pelo Suplicado em nome das referidas sociedades e extratos bancários** - onde se constata que as *off shores* - **na realidade o Sr. Helio** - realizam transações financeiras de alto vulto, v.g., **US$ 2.190.000,00 (dois milhões e cento e noventa mil dólares), em 25.10.2004, US$ 240.000,00 (duzentos e quarenta mil dólares), em 22.10.2004, US$ 50.000.00 (cinqüenta mil dólares) e US$ 3.470.523.86 (três milhões, quatrocentos e setenta mil, quinhentos e vinte e três dólares e oitenta e seis cents), em 07.01.05 (cf. Anexo I).**

24. A análise um pouco mais acurada de tais documentos demonstra, de forma inequívoca, que o Sr. Helio é o verdadeiro titular das referidas *off shores*, já que, dentre eles, se encontram, nada mais, nada menos que:

AV. MAJOR SILVIO MAGALHÃES  PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

12 of 49



PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA

- cópia do cartão de crédito Amex do Sr. Helio, debitado na conta-corrente de titularidade da Starkman, do HSBC de Miami;
- ordens de transferência de dinheiro da conta corrente da Starkman, junto ao Banco Lehman Brothers, assinadas pelo Sr. Helio;
- ordem de compra e venda de ações em nome da Starkman, assinadas pelo Sr. Helio; e
- documento de abertura de um fundo de investimento junto ao HSBC Privat Bank, em nome da Doll Investment, assinado pelo Sr. Helio.

25. A prova cabal de que o Suplicado é, na realidade, o dono das referidas empresas, reside no fato de que uma das procuradoras da "Starkman" é nada mais, nada menos, que uma de suas filhas, a Sra. Andréa Alexandra Hodara (Doc. 10).

26. Com efeito, MM. Juiz, **o Suplicado adotou procedimento comumente utilizado nos dias de hoje, constituindo duas empresas com ações ao portador (off shore), que têm sua sede em paraísos fiscais, as quais são titulares de contas correntes e aplicações financeiras junto aos Bancos Lehman Brothers e HSBC Private Bank, onde a sua fortuna de vários milhões de dólares se encontra depositada.**

27. **Tais empresas, portanto, se confundem com a pessoa do Suplicado.** E tudo porquanto, insista-se, é o Sr. Helio quem, de fato, se esconde sob o manto das referidas sociedades.

28. Dessa forma, não é difícil para o Suplicado promover a transferência dos consideráveis valores que se encontram depositados junto às contas-correntes e às aplicações financeiras abertas em seu nome e no das empresas **"STARKMAN INVESTEMENTS LTD."** e **"DOLL INVESTMENTS LTD"**, frustrando, destarte, a divisão igualitária do patrimônio comum.

29. Assim, **para que a providência acautelatória ora requerida possa atingir o seu objetivo, assegurando o resultado útil da ação principal de separação judicial, é imperioso que se aplique, *in casu*, a teoria da desconsideração da personalidade jurídica em relação às sociedades "STARKMAN" e "DOLL", com o conseqüente arrolamento dos bens que integram os seus ativos.**

AV. MAJOR SILVIO MAGALHÃES PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

13 of 49

PRISCILA M. P. CORRÊA DA FONSECA

ADVOCACIA



30. É que, como cediço,

> "São várias as formas através das quais se
> pode prejudicar o cônjuge ou a companheira
> com atos praticados sob o manto pseudo-
> protetivo da empresa." (TERESA ARRUDA
> ALVIM WAMBIER, A desconsideração da
> pessoa jurídica para fins de partilha e a prova
> dos rendimentos do cônjuge-varão na ação de
> alimentos, pelo nível da vida levada por este, in
> Direito de Família – Aspectos Constitucionais,
> Civis e Processuais, Vol. 3, Coord. Teresa
> Arruda Alvim Wambier e Alexandre Alves
> Lazarini, Ed. RT, 1996, pág. 190).

31. Daí porque, aliás, a ressalva de TERESA
ARRUDA ALVIM WAMBIER, no sentido de que existem casos em que a
aparência não retrata, com fidelidade, a verdade, destacando: "1) **os em que o
patrimônio do casal tenha sido absorvido por uma pessoa jurídica de
molde que, na partilha, à separanda nada caiba, pois os bens estariam em
nome da empresa"** (ob. cit., pág. 176, nossos grifos).

32. A jurisprudência, da mesma forma, não hesita em
reconhecer o cabimento da aplicação da teoria do *disregard*, conforme se
depreende da análise dos julgados a seguir transcritos, proferidos pelo E.
Tribunal de Justiça do Rio Grande do Sul:

> "Deve ser  desconsiderada a personalidade de
> sociedade jurídica por cotas formada por dois
> sócios, concubinos casados pelo religioso,
> rejeitando-se pedido de liminar em embargos de
> terceiro promovidos pela sociedade, visando
> obstar arrolamento de bens promovido pela
> mulher. **Possibilidade de fraude do varão,
> ocultando sob o manto da pessoa jurídica**.
> Este, em realidade, age em nome próprio e não
> da sociedade." (AI n.º 593.074.602, rel. Des.
> Paulo Heerdt, in RJTJRGS 160/286, nossos
> grifos).

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



> "Mandado de Segurança. Aplicação da doutrina
> da *disregard*. Em se tratando de empresa em
> que o controlador tem quase o poder absoluto
> sobre ela, por ser sócio majoritário, e com a
> família ainda é sócio majoritário, ao juntarmos
> as suas quotas, **pode ser confundida a pessoa
> jurídica com a pessoa física dele, eis que, se
> entendermos eu há intangibilidade dos bens
> da empresa, por se tratar de uma pessoa
> jurídica, estaremos atingindo, por via
> oblíqua, a meação da mulher, ao permitir
> que esses bens sejam alienados e, assim, seja
> esvaziado o capital das empresas.**" (MS n.º
> 593.116.601, nossos grifos).

33. Merece transcrição, ainda, o recente julgado proferido pela C. Nona Câmara de Direito Privado do Egrégio Tribunal de Justiça de São Paulo, ao analisar caso idêntico àquele ora *sub examine*:

> "**Agravo de instrumento – Medida cautelar
> de arrolamento de bens – Desconsideração
> da personalidade jurídica – Na hipótese, os
> indícios estão a demonstrar que o agravante
> mantém intacto seu patrimônio pessoal,
> através da integralização de alguns de seus
> bens na constituição e ingresso de sociedades
> – Tais bens passam, assim, a ser patrimônio
> da sociedade, prejudicando os direitos dos
> interessados, como é o caso da requerente –
> Ao que consta, o recorrente poderia alienar
> os bens da sociedade sem a concordância da
> ex-companheira, o que autoriza o
> arrolamento desses imóveis – Recurso
> improvido.**" (AI n.º 303.427-4, rel. Des. Sérgio
> Gomes, nossos grifos).

34. Extraí-se, do corpo de tal decisório, em razão do brilho da exposição, o seguinte trecho:

> "A teoria da desconsideração da pessoa jurídica
> objetiva que os sócios não se ocultem sob o

AV. MAJOR SILVIO MAGALHÃES  PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

15 of 49

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



manto da sociedade, com lesão a interesses de terceiros. 'Aplica-se, à espécie, o ensinamento de Rubens Requião, de que em casos excepcionais deve se equiparar os sócios à sociedade, como aconteceu no julgamento do caso Montgomery Web Company vs. Dienelt, no qual o tribunal indagou a si próprio se o direito há de fechar seus olhos diante da realidade de que a diferença (entre a pessoa jurídica e o sócio) é um mero jogo de palavras. Respondeu, sem vacilações, que a solução há de ser sempre a de que nada existe que nos obrigue a semelhante cegueira jurídica.' (Aspectos Modernos de Direito Comercial, pp. 69/71, Saraiva, 1977) (JTACSP-RT 100/64).

O ilustre Magistrado ressaltou que: 'No caso dos autos, os indícios estão a demonstrar que o suplicado se utiliza da mesma sistemática, mas de forma inversa, ou seja, mantém intacto seu patrimônio pessoal através da integralização de alguns de seus bens na constituição e ingresso de sociedades. Tais bens passam, assim, a ser patrimônio da sociedade, prejudicando os direitos dos interessados, como é o caso da requerente, que não pode invadir a esfera patrimonial daquela, senão através da desconsideração da pessoa jurídica. **E o artigo 50, do Código Civil, permite ao magistrado, na hipótese de confusão patrimonial, aplicar a teoria em questão de forma a reprimir o uso indevido da personalidade jurídica.**" (nossos grifos).

35. Realmente, o novo Código Civil prevê expressamente que, *"Em caso de abuso de personalidade jurídica, caracterizado pelo desvio de finalidade, ou pela <u>confusão patrimonial</u>, pode o juiz decidir, a requerimento da parte, ou do Ministério Público quando lhe couber intervir no processo, que os efeitos de certas e determinadas relações e obrigações sejam estendidos aos bens particulares dos administradores ou sócios da pessoa jurídica."* (art. 50, nossos grifos).

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



36. Ora, na espécie, não há dúvida de que as sociedades **"STARKMAN INVESTEMENTS LTD.,** e **"DOLL INVESTMENTS LTD"** são de propriedade do Sr. Helio e com ele se confundem, sendo certo que parte dos bens (aplicações financeiras) que integram os seus respectivos ativos pertencem, na realidade, ao casal, em razão do indelegável direito de a Suplicante receber, na partilha a ser encetada nos autos principais, os frutos e os rendimentos dos bens do Suplicado.

37. É indubitável, pois, que pode o Suplicado a qualquer momento dilapidar tais bens sem quaisquer entraves, tal como, aliás, já ameaçou. Portanto, a fim de resguardar a efetividade da oportuna partilha dos haveres do casal, faz-se imprescindível o arrolamento e bloqueio dos bens comuns, os quais, como visto, são de facílima alienação.

38. Em suma, MM. Juiz, **o pedido de separação judicial do casal, de um lado, e o justo temor da Suplicante no sentido de que o Suplicado possa desviar os bens que se acham em seu nome e de suas sociedades, de outro lado, justificam o arrolamento ora requerido.**

39. A propósito, já teve ensejo de decidir o E. Tribunal de Justiça do Rio Grande do Sul, ao examinar a hipótese de arrolamento de bens em processo de separação judicial, que **"Verificada a intenção de um dos cônjuges de causar atos lesivos ao outro, justifica a providência cautelar de arrolamento de bens do casal. Não se faz mister a prova inequívoca dos atos em causa, mas suficiente se mostra a potencialidade dos mesmos, capaz de inspirar, em qualquer pessoa sensata, medo de ser prejudicado."** (2º Grupo de Câmaras do TJ-RS, rel. Des. Hermann Roenick, *in* Rev. de Jurisp. do TJ-RS, vol. 62, pág. 138, nossos grifos).

40. Ressalte-se que **"O sentido de 'dissipação', no art. 855, é assaz largo: basta qualquer receio de dano"**, razão pela qual "*Só se exige para a ação cautelar de arrolamento de bens que haja legítimo interesse do autor da medida.*" (PONTES DE MIRANDA, Comentários ao Código de Processo Civil, Tomo XII, Ed. Forense, 1976, pág. 285, nossos grifos).

41. Ademais, considerando-se que a Suplicante é titular de metade ideal de todos os lucros e rendimentos auferidos pelo Suplicado durante o interregno em que perdurou o relacionamento das partes,

AV. MAJOR SILVIO MAGALHÃES PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

17 of 49

PRISCILA M. F. CORRÊA DA FONSECA
ADVOCACIA



não há dúvida acerca de seu legítimo interesse em que se proceda ao arrolamento e bloqueio de tais bens, para que seja assegurada a partilha justa e equânime do acervo comum do casal.

42. Não será demasiado assinalar, finalmente, que a concessão da medida acautelatória ora requerida não trará qualquer prejuízo às partes, assegurando, ao revés, a integridade do patrimônio comum até a oportuna partilha.

## - II -
## CONCLUSÃO E REQUERIMENTOS FINAIS

43. Em face de todo o exposto, requer a Autora se digne V. Exa. determinar, *in limine* e *inaudita altera pars*, o **arrolamento** de todos os bens que se acham em nome do Suplicado ou, ainda, daqueles que se encontram em nome das sociedades "**STARKMAN INVESTEMENTS LTD.**, e "**DOLL INVESTMENTS LTD**", assim como daqueles de titularidade exclusiva da varoa, que se encontram no imóvel que servia de residência às partes, em especial os a seguir alinhados:

a) Em nome do Suplicado

- saldo existente junto ao Banco Itaú, Agência 0695, c/c nº 93126-1 e eventuais aplicações financeiras;
- saldo existente junto ao Banco Safra, agência 08700, c/c nº 21745 e eventuais aplicações financeiras.

b) Em nome das sociedades

- saldo existente junto aos Bancos Lehman Brothers, c/c nº 743.10870.1.9.130 e HSBC Private Bank, em nome da "Starkman" e eventuais aplicações financeiras;
- saldo existente junto ao Banco HSBC Private Bank – USA, c/c 033.7151450 em nome da "Doll" e eventuais aplicações financeiras.

c) Bens da Suplicante

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



- Documentos e bens móveis (contratos, jóias, numerário, em espécie) que se encontram no cofre existente no imóvel que serviu de residência às partes.

44. E, em face circunstâncias acima narradas, mas, principalmente porquanto satisfeitos na espécie os requisitos inerentes a toda e qualquer medida cautelar - *fumus boni iuris* e *periculum in mora* -, é que requer-se a V. Exa. se digne conceder, *in limine e inaudita altera parte*, o provimento acautelatório ora pleiteado, nomeando-se a Requerida depositária dos bens descritos no item "c" supra e o Requerido como depositário dos demais bens.  Protesta, ainda, a esposa pelo arrolamento de outros bens existentes em nome do varão, porventura localizados no curso desta demanda.

45. Caso entenda V. Exa. imprescindível para a concessão liminar do provimento requerido, protesta a Suplicante pela realização de audiência de justificação prévia.

46. Requer-se, outrossim, venha a ser cientificado o Suplicado de que não poderá vir a se desfazer dos bens que com ele se acham, sem plena e expressa autorização desse Juízo, bem como intimado para que não venha a onerar, gravar ou alienar, de qualquer forma, os bens que integram o patrimônio comum do casal.

47. Postula-se, finalmente, se digne V. Exa. determinar a citação do Suplicado para que, querendo e sob pena de revelia, conteste a presente ação, a qual, ao final deverá ser julgada procedente, tornando-se definitivo o provimento acautelatório pleiteado, com a sua conseqüente condenação ao pagamento dos ônus decorrentes da sucumbência, tais como custas e despesas processuais, bem como honorários advocatícios.

48. Almeja a Suplicante, ademais, se digne V. Exa. facultar ao Sr. Oficial de Justiça proceder em conformidade com a previsão contida no artigo 172, § 2°, do Código de Processo Civil.

49. Protesta e requer provar o alegado por todos os meios em direito admitidos, em especial depoimento pessoal do Suplicado, sob pena de confesso, inquirição de testemunhas, juntada de documentos, requisição de informações, exames, perícias, etc.

AV. MAJOR SILVIO MAGALHÃES   PADILHA, 5200 - ED. QUEBEC - CJ 401

05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

PRISCILA M. P. CORRÊA DA FONSECA
ADVOCACIA



50. Desde logo, todavia, requer a Suplicante se digne V. Exa. determinar, **com urgência**, a expedição do s seguintes ofícios:

a) à **Delegacia da Receita Federal** para que envie a esse MM. Juízo cópia das últimas 3 declarações de imposto de renda do Requerido (CPF n° 011.184.128-34)

b) aos Bancos: **SAFRA, ITAU, HSBC e LEHMAN BROTHERS**, a fim de que informem a existência de contas e ou aplicações financeiras, ações e/ou investimentos de qualquer natureza, no Brasil ou no exterior, em nome do Suplicado (CPF n° 011.184.128-34) e das sociedades "**STARKMAN INVESTEMENTS LTD.**" e "**DOLL INVESTMENTS LTD**", bloqueando o saldo ali existente, bem como enviando os extratos bancários das referidas contas e/ou aplicações desde 20 de setembro de 2002, data do matrimônio, até a presente data;

c) à **BOLSA DE VALORES DE SÃO PAULO**, a fim de que informe a existência, assim como proceda ao bloqueio às ações e investimentos de qualquer natureza que se encontrem em nome do Requerido (CPF n° 011.184.128-34) e das sociedades "**STARKMAN INVESTEMENTS LTD.**" e "**DOLL INVESTMENTS LTD**", junto a tal instituição.

50. Dá-se à presente, para fins fiscais, o valor de R$ 100.000,00 (cem mil reais), protestando pela sua ratificação após a exata dimensão do patrimônio a ser objeto de partilha na ação principal.

Termos em que, requerendo-se a distribuição por dependência a esse MM. Juízo, perante o qual tramita o pedido de alvará de separação de corpos,

P. Deferimento.

São Paulo, 23 de maio de 2005.

Priscila M. P. Corrêa da Fonseca

Carolina Schena do Valle



**Rita de Cássia Teixeira**
Tradutora Pública Juramentada e Intérprete Comercial
para os idiomas Inglês e Português

| | |
|---|---|
| Matrícula JUCESP n.º 1618 | CPF/MF n.º 089.545.738-51 |
| CCM n.º 2.942.180-2 | INSS n.º 1137.4250.907 |

Rua Marcos Lopes 132, apto 43 - CEP 04513-080 São Paulo/SP
Tel./Fax 3845 5152                 e-mail: ritapk@hotmail.com

| | | |
|---|---|---|
| Tradução n. º 285 | Livro n.º 003 | Fl. n.º 057 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
I, the below signed Sworn Translator for the English and Portuguese languages, CERTIFY this to be a faithful translation from Portuguese into English of a document received on this date.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[02]

**PRISCILA M. P. CORRÊA DA FONSECA**
**ATTORNEY-AT-LAW**

| | |
|---|---|
| PRISCILA M. P. CORRA DA FONSECA | PAULO CARVALHO CAIUBY |
| CARLA FALCONE BRAGAGLIA | CAROLINA SCATENA DO VALLE |
| FERNANDA VILLARES MATTA | ELEONORA G. SALTÃO DE Q. MATTOS |
| JULIANA VIEIRA DA ROCHA | JOSE EXPEDITO DE OLIVEIRA JUNIOR |

**Honorable Judge of the 11th Family and Probate Division of the Central District Court of the Capital City**

5210

**URGENT**

         **ELIZABETH    REGINA    GOMES    NEVES HODARA**, Brazilian, married, bearer of Identification Card RG # 6152549-2, enrolled in the Individual Taxpayer Roll of the Ministry of the Treasury under # 989.384.448-72, currently residing, temporarily, in her son's apartment situated at Rua da  Consolação n. 3563, apt. 151, through her attorneys (Exh..01)  respectfully comes before Your Honor, incidentally, considering the provision contained in Section 855 on of the Code of Civil Procedure, to petition the following:

**<ins>EMERGENT TEMPORARY INJUNCTION FOR ATTACHMENT OF ASSETS</ins>**

against HELIO HODARA, Brazilian, married, entrepreneur, enrolled in the Individual's Taxpayer Roll of the Ministry of the Treasury under # 011.184.128-34, residing and domiciled in this capital city of the State of Sao Paulo, at Rua Artur Ramos n. 339, apt. 221, and the plaintiff does so for the following reasons and purposes:



AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077

| Tradução n.º 285 | Livro n.º 003 | Fl. n.º 058 |

**PRISCILA M. P. CORRÊA IDA FONSECA**
ATTORNEY-AT-LAW

[03]

- I -
### THE FACTS

### A) Background

1. The Petitioner started seeing the Respondent in early 2001, and, by the end of the same year, Mr. Hodara started paying for all of Ms. Neves' expenses. At the end of May 2002, the parties started living under the same roof in the residence previously occupied only by the Respondent, situated at the Condomínio Santa Helena, in the Alto da Boa Vista district.

2. After 4 (four) years living together, the Petitioner married the Respondent, more specifically on September 20, 2002, according to the marriage certificate registered at the 20th Civil Registry Office of the City of Sao Paulo, Jardim America sub-district (Book # B-061, pg. 117, record # 14.118), under the separate property regime, according to the Pre-Nuptial Agreement filed with the 27th Notary Public Office of the capital city of Sao Paulo on April 19, 2002 (pg. 111, book 1415) (Exh. 02/03). The couple had no children.

3. Although, at the beginning, the couple lived in reasonable harmony, the marital life eventually became unbearable due to the Respondent's reproachable behavior, mining the couple's life together.

4. Therefore, Your Honor, due to the unbearable atmosphere created by the husband, the Petitioner found it sensible to leave the couple's home last March 04, after filing a petition for this Court to issue a temporary restraining order decreeing divorce *a mensa et thoro* in order to **legalize the *de facto* separation which already existed, and the order was issued *inaudita altera parte* by Your Honor. (Exh.04/05)**



AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077

<u>Tradução n. ° 285</u>　　　　　<u>Livro n.° 003</u>　　　　　<u>Fl. n.° 059</u>

**PRISCILA M. P. CORRÊA IDA FONSECA**　　　　[04]
ATTORNEY-AT-LAW

5. Therefore, the reproachable conduct adopted by the Respondent caused the end of the marriage between the parties, leading the Petitioner to turn to the only possible solution: file a divorce suit, through which she wishes to obtain dissolution of the marriage exclusively on grounds of her spouse's conduct. (Doc.06)

### B) The incontestable right of the Petitioner to the marital property *(fumus boni iuris)*

6. In the divorce suit, the Petitioner requested partition of the couple's marital property, since, although the parties had adopted the separate property regime, the truth is, due the omission in the pre-nuptial agreement between the parties, the Petitioner is entitled to part of the **gains** and **income** derived from the Respondent's property (investments, etc.) obtained during the marriage.

7. This is provided by Section 259 of the 1916 Civil Code – applicable to the case, according to the wording of Section 2039[1] of the new Civil Code: "*Although the community property regime was not adopted, given the **silence of the contract**, its principles shall prevail in respect of the partition of the property acquired during the marriage* ". Therefore, when the pre-nuptial agreement has no express covenants, the legal community property principles shall prevail.

8. Therefore, the Petitioner has the unequivocal right to part of the **gains** and **income** derived from the Respondent's property during the marriage, and concerning the community property principle, Section 265 of the former Civil Code provides that *"**the incommunicability of the property listed in Section 263 does not apply to the gains, when these are obtained or due during the time the couple was still married"**.*

9. The Petitioner has, thus, an irrefutable right to the **gains** and **income** derived from the property owned by the Respondent during the time the couple was still married, as provided for in Section 265 of the 1916 Civil Code.

---

[1] "The property regime for marriages celebrated when the previous Civil Code was in force, Act 3071 of January 1st 1916 is established by the Code" (section 2039).

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077



Case 1:08-mc-21005-PAS   Document 1   Entered on FLSD Docket 04/15/2008   Page 24 of 49

**PRISCILA M. P. CORRÊA IDA FONSECA**       [05]
ATTORNEY-AT-LAW

10. In this context, ARNOLD WALD explains that: *"Before the 2002 Civil Code came into force, the Brazilian legislation determined that dissolution of a marriage would only be deemed absolute, broad and complete if the pre-nuptial agreement contained a clause establishing that the separate property included not only current property, but also future property and its respective gains and income"* (from O Novo Direito da Família [The New Family Law], 15th Edition, Editôra Saraiva, São Paulo, 2004, p. 122, n.g.).

11. For the same reason, WASHINGTON DE BARROS MONTEIRO says "***the incommunicability of the property does not apply to the gains, when these are obtained or due during the time the couple was still married (Section 265 of the Civil Code). The incommunicability constitutes an exception. The rule is the communicability of all property, principal and accessory, between the couple. This matter is construed restrictively; therefore, unless otherwise provided, the gains and income derived from the incommunicable property obtained during the marriage are not incommunicable. The gains are always communicable, even when the separate property regime is adopted.*** (from Curso de Direito Civil [Civil Law Course], Editôra Saraiva, São Paulo, 1997, 34th Edition, p. 173 n.g.).

12. Apropos, Brazilian court decisions do not conflict in their interpretation of the communicability of the property unless otherwise provided in the pre-nuptial agreement: "Regarding the communicability of the property acquired during the marriage, ***if the pre-nuptial agreement is silent, there is no way to prevent the communicability of the property acquired during the marriage***" (TJRS, Ap. # 593041489, rel. Des. Waldemar Luiz de Freitas Filho, j. 22.12.93).

13. Therefore, the right of the Petitioner to the gains and income derived from the assets held by the Respondent during the course of the marriage is undeniable

14. And, since the right of the Petitioner to part of the marital property is irrefutable, she requests issuance of the injunction hereby requested in order to guarantee a positive outcome of the principal claim. This is necessary to prevent the Respondent from dilapidating the couples' property.

**C) Existence of *periculum in mora* in the case**



Tradução n. ° 285          Livro n.° 003                    Fl. n.° 061

**PRISCILA M. P. CORRÊA IDA FONSECA**          [06]
ATTORNEY-AT-LAW

15. The Petitioner fears  that, until the marriage is definitely dissolved, the Respondent, showing his mean intentions, shall dilapidate the marital property, hide or encumber the couple's property, which consists mainly of high-value financial investments. All this, Your Honor, with the intention to cause a loss to his wife when the inevitable partition of the marital property is carried out.

16. Such circumstance is even clearer when we consider the fact that the Respondent has recently assured his wife that she will get nothing, absolutely nothing, when the marriage is dissolved, having even refused to return to her some property exclusively owned by her (jewels, personal documents, cash, etc.) that she kept in the place where they used to live together.

17. Moreover, the Petitioner has recently learned that Mr. Hodara had traveled to the United States of America to transfer the funds owned by him and deposited in a number of U.S. financial institutions to a new offshore institution that goes by the name of Finvestors, a company incorporated in the Virgin Islands under n. IBC646400 last March 15. As Your Honor can see, the Respondent is acting with the intention to leave his wife with no resources, a situation made worse by the fact the he is not even making the alimony payments as required by law.

18. The Petitioner's fear is, therefore, based on the fact that most of the assets that compose the marital property – **a high sum of money deposited in current accounts and financial investments in Brazil and abroad – can be easily diverted by the Respondent, who appears as the sole owner of the assets –** IN THE MONTH OF DECEMBER 2004 ALONE, one of the Respondent's accounts in Brazil received deposits worth R$ 84, 450.00 while the account he holds at Banco Safra had an average balance of R$ 46,000.00 (forty six thousand reals) in the same month – Exh. 07) **together with his off-shore companies established in tax havens.**

19. This results from the fact that, when the Respondent had already amassed an incredible fortune, he decided to sell his interest in the company FRED CONFECÇÕES LTDA, creating, with the amount obtained from the sales of his interest, a foreign trust, of which his daughters from his first marriage shall be the beneficiaries upon his death, receiving the immodest sum of **US$ 700,000.00 (seven**

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077
AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077



| Tradução n. º 285 | Livro n.º 003 | Fl. n.º 062 |

**PRISCILA M. P. CORRÊA IDA FONSECA**
ATTORNEY-AT-LAW                                          [07]

**hundred thousand American dollars)** each per year. This way, most of the capital currently owned by the Respondent is invested abroad.

20. In fact, Your Honor, the Respondent's **MILLIONAIRE** assets, which had already reached over US$ 40,000,000.00 (forty million dollars) when he divorced Janete, his ex-wife (Exh..08) consists, basically, of high-value financial investments.

21. That is why, Your Honor, due to the unequivocal possibility of having the property lost, it is necessary to freeze the assets that make up the marital property. The problem is, however, that, as we shall demonstrate ahead, a large part of the assets are not formally owned by the Respondent, but by different companies established by him abroad in recent years.

## D) Commingled Property

22. The exhibits attached to the court records prove that, in recent years, the Respondent has established two off-shore companies, namely, **STARKMAN INVESTMENTS LTD.**, with main offices on the Virgin Islands, and **DOLL INVESTMENTS LTD.**, with main offices on the Cyman *[sic]* Islands, two tax havens. (Exh. 09)

23. And, in order for Your Honor to verify the accuracy of this claim, it shall be enough to examine the documents hereto attached: - **faxes signed by the Respondent on behalf of the corporations mentioned before and bank statements** – through which we can see that the off-shore companies, **in reality, Mr. Hodara,** carry out transactions involving high sums of money, v. g. **US$ 2,190,000.00 (two million, one hundred and ninety thousand dollars) in 10.25.2004; US$ 240,000.00 (two hundred and forty thousand million) in 10.22.2004; US$ 50,000.00 (fifty thousand dollars) and US$ 3,470,523.86 (three million, four hundred and seventy thousand, five hundred and twenty-three dollars and eighty-six cents) on 01.07.05 (Appendix I).**

24. A more thorough analysis of such documents reveals, unequivocally, that Mr. Hodara is the real owner of the offshore companies, since, among these documents, we can find:

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077



Tradução n.º 285       Livro n.º 003       Fl. n.º 063

**PRISCILA M. P. CORRÊA IDA FONSECA**
ATTORNEY-AT-LAW       [08]

- a copy of Mr. Hodara's Amex card, debited out of the account held by Starkman at HSBC Miami;
- money transfer orders signed by Mr. Hodara related to the Starkman account held at Lehman Brothers Bank ;
- securities sales and purchase orders in the name of Starkman signed by Mr. Hodara;
- a document signed by Mr. Hodara opening an investment account with HSBC Private Bank under the name of Doll Investment.

25. The definite evidence that the Respondent is, in fact, the owner of said companies is that one of Starkman's attorneys is his daughter Ms. Andréa Alexandra Hodara (Doc. 10).

26. As a matter of fact, Your Honor, **the Respondent has resorted to a tactic widely used nowadays: he has set up two corporations with bearer shares (off-shore corporations) and main offices in tax havens; said corporations holding current accounts and financial investments with Lehman Brothers Bank and HSBC Private Bank, where his fortune in the amount of several million dollars is deposited.**

27. **Therefore, one can not distinguish said companies from the Respondent's person**. It is fair to presume Mr. Hodara is actually hiding himself behind such corporate façades.

28. This way, it is easy for the Respondent to transfer high amounts of money deposited in the current  and investments accounts held in his name and the name of **"STARKMAN INVESTMENTS LTD."** and **"DOLL INVESTMENTS LTD.",** thus frustrating the equalitarian partition of the marital property.

29. Also, **for the temporary injunction, hereby requested by the Plaintiff, to reach its objective, assuring a positive outcome of the main divorce suit, it is imperative to apply,** *in casu*, **the doctrine of disregard of the legal entity in respect of "STARKMAN" and "DOLL", proceeding to the attachment of the assets held in their names.**

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077



**PRISCILA M. P. CORRÊA IDA FONSECA**
ATTORNEY-AT-LAW

[09]

30. As is generally known,

> **"There are many ways to cause harm to one's wife or spouse through using a corporation's pseudo-protective façade."** (TERESA ARRUDA ALVIM WAMBIER), <u>The disregard of the legal entity for purposes of partition of assets and proof of income of the male spouse in alimony suits, considering his life style,</u> from Direito de Família — Aspectos Constitucionais, Civis e Processuais [Family Law — Constitutional, Civil and Procedural Aspects] — Vol. 3, Coord. Teresa Arruda Alvim Wambier and Alexandre Alves Lazarini, Editôra RT, pg. 190).

31. Hence, apropos, the note written by TERESA ARRUDA ALVIM WAMBIER, stating that there are cases in which the appearances do not truly reflect the reality, highlighting: "1) **cases in which the marital property has been absorbed by a corporation in a way that the female spouse is left with nothing after partition of the assets, for most of the property was held in the name of the corporation"** (ob. cit. pg. 176, our underline).

32. In the same fashion, case law does not hesitate to recognize the relevance of applying the disregard doctrine, as can be implied from the following decisions rendered by the Supreme Court of the State of Rio Grande do Sul:

> "The doctrine of disregard of the legal entity formed by two partners, when such partners are married before the Church, must be applied rejecting demands for interpleas by the corporation aiming at hindering suits for attachment of assets filed by the female spouse. **Possibility of fraud by the male spouse, hiding himself behind the corporate façade.** In reality, he is acting on his own behalf, not on behalf of the corporation." (AI # 593.074.602, rep. Justice Associate Paulo Heerdt, from RJTJRGS, our underline).



Tradução n. ° 285          Livro n.° 003          Fl. n.° 065

**PRISCILA M. P. CORRÊA IDA FONSECA**          [10]
ATTORNEY-AT-LAW

"Injunction. Application of the disregard doctrine. As the corporation's owner, in the capacity of major shareholder, has virtually total power over it, and, together with his family, he is still its major shareholder, when we consider its total shares, **the corporation cannot be distinguished from the individual, Mr. Hodara; therefore, if we see the corporate property as intangible, given the corporation status as a legal entity, we will be affecting the female spouse's right to part of the property by allowing the property to be transferred, thus dilapidating the corporations' capital.**" (MS n. 593.116.601, our underline).

33. It is also worth mentioning the sentence decision delivered by the 9th Private Law Chamber of the Supreme Court of the State of Sao Paulo, when judging an identical case to the case herein examined:

**Interlocutory appeal – Temporary injunction for attachment of assets – Disregard of the legal entity – The evidence shows that the appellant has maintained his personal property intact through investing his assets to set up and acquired an interest in a number of corporations – Such assets have thus become part of the corporate property, affecting the right of other stakeholders, such as the petitioner – It is understood that the appellant might transfer the corporation's assets without his ex-wife's consent, a fact that authorizes the attachment of the property – Appeal rejected.**" (AI # 303.427.427-4, rep. Court of Appeals Judge Sérgio Gomes, our underline).

34. From the text mentioned in such brilliant account, we can extract the following part:

"The doctrine of disregard of the legal entity aims to prevent partners from hiding behind the corporate



AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077

Case 1:08-mc-21005-PAS   Document 1   Entered on FLSD Docket 04/15/2008   Page 30 of 49

**PRISCILA M. P. CORRÊA IDA FONSECA**     [11]
ATTORNEY-AT-LAW

façade, harming the interests of third parties. 'Applying to the case is the guidance offered by Rubens Requião, who teaches us that, in extraordinary cases, the partners must be compared with the corporation, as in the trial of Montgomery Web Company x Dienelt, in which the court asked itself if the Law should be blind to the reality that showed the difference (between the corporation and its partners) is just a matter of words. He answered, without hesitation, that the solution is to insist that nothing exists that can force us into such legal blindness.' (Aspectos Modernos de Direito Comericial [Commercial Law Legal Aspects] pgs. 69/71, Saraiva, 1977) (JTACSP-RT 100/64).

The illustrious Magistrate pointed out that: "Regarding the case, the evidence shows that the defendant uses the same approach, however, inversely, that is, he keeps his personal property intact through investing some of his assets to set up and acquire an interest in a corporation. These assets then become corporate assets, affecting the rights of other stakeholders, such as the petitioner, who, incapable of invading the corporations' property sphere, is left with no devices other than requesting application of the doctrine of disregard of legal entities. **Moreover, Section 50 of the Civil Code allows magistrates, when co-mingling of personal and corporate assets exists, to apply the doctrine to address the procedural question and limit the undue use of the legal entity.**"(our underline).

35. As a matter of fact, the new Civil Code expressly provides that: When abuse of the legal entity status is detected, having the corporation engaged in activities other than those for which it was incorporated or having it commingled its assets with its shareholders' assets, the judge may decide, under request of the party or the District Attorney's Office, whenever he deems appropriate to intervene in the suit, that the effects of certain relationships and liabilities be extended to the personal assets of the directors or partners in the legal entity." (sec. 50, our underline).



**PRISCILA M. P. CORRÊA IDA FONSECA**                [12]
ATTORNEY-AT-LAW

36. The case shows without a shadow of doubt that the corporations, "**STARKMAN INVESTEMENTS** [sic] **LTD**." and "**DOLL INVESTMENTS LTD**." are owned by Mr. Hodara, and that their assets commingle with Mr. Hodara's personal assets, with part of the assets (financial investments) owned by both belonging, in fact, to the couple, due to the Petitioner's irrefutable right to receive, upon partition of the marital property, included in the principal suit, the gains and income derived from the Defendant's assets.

37. It is obvious that the Defendant could, at any time, dilapidate such assets without any hindrance, as he has threatened to do. Therefore, in order to assure the execution of the partition of the couple's property, it is essential to order the attachment and freeze of the common property, which, as explained, can be easily alienated.

38. In summary, Your Honor, **the filing for dissolution of the marriage, on the one hand, and the justifiable fear of the Petitioner that the Defendant might divert the assets held in his name and in the name of his corporations, on the other hand, justify the granting of the attachment injunction hereby requested**.

39. Apropos, upon examining the request for attachment of assets in a divorce suit , the Supreme Court of the State of Rio Grande do Sul, ruled that: **"Upon verification of the intention of one of the spouses to cause harm to the other spouse, this Court finds it justifiable to grant the injunction for attachment of the couple's property. It is not necessary to provide unequivocal evidence of the acts been examined; the mere possibility of such acts being actually carried out is enough to make a sensible person fear being harmed."** ( 2nd Chamber Group of the Supreme Court of the State of Rio Grande do Sul, rep. Court of Appeals Judge Herman Roenick, from Rev. de Jurisp. (Case Law Review) of the SC of RGS, vl. 62, pg. 138, our underline).

40. It is worth pointing out that: **"The 'squandering' sense mentioned in Section 855 is quite broad: the mere fear of being harmed is sufficient"**, and this is the reason why: **"The only factor required for petitioning a temporary injunction for attachment of assets is in the plaintiff's legitimate interest."** (PONTES DE MIRANDA, Comentários ao Código de Processo Civil [The Commented Civil Procedural Code], vol. XII, Ed. Forense, 1976, pg. 285, our underline).

41. Furthermore, whereas the Petitioner is entitled to one half of all gains and income realized by the Defendant during the marriage, there is no

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED, QUEBEC - CJ 401
05693-000 SÃO PAULO – SP - TEL.: 3758-2345 - FAX: 3755-0077



Tradução n.° 285      Livro n.° 003      Fl. n.° 068

**PRISCILA M. P. CORRÊA IDA FONSECA**      [13]
ATTORNEY-AT-LAW

doubt about her legitimate interest in proceeding with the attachment and freeze of such assets, in order to assure fair and equitable partition of the couple's common property.

    42. Finally, it is appropriate to reiterate that granting of the temporary injunction, hereby requested, shall not cause harm to either party; instead, it shall assure the integrity of the couple's marital property until the partition is effected.

- II -
## CONCLUSION AND FINAL REMARKS

    43. Considering the facts presented, the Plaintiff hereby requests Your Honor to determine, *in limine* and *inaudita altera pars*, the attachment of all assets held in the name of the Defendant, including those in the name of "STARKMAN INVESTEMENTS LTD." and "DOLL INVESTMENTS LTD.", as well as those exclusively held by the female spouse in the place that served as residence of the parties, particularly, as follows:

a)  held in the name of the Defendant:

- assets in the account held at Banco Itaú, Branch # 0695, Acc.# 93126-1  and any invested funds;
- assets in the account helf at Banco Safra, Branch # 08700, Acc.# 21745 and any invested funds.

b)  held in the name of the corporations:

- assets in the account of "Starkman" at Lehman Brothers Bank, Acc.# 743.10870.1.9.130 and at HSBC Private Bank and any invested funds;
- assets in the account of "Doll" at HSBC Private Bank – USA, Acc.# 033.7151450, and any invested funds.

c)  held in the name of the Petitioner:



**PRISCILA M. P. CORRÊA IDA FONSECA**                                [14]
ATTORNEY-AT-LAW

- Documents, good and chattel (contracts, jewels, cash) kept in the safe of the property where the parties lived when married.

44. In face of the above-mentioned facts, but, especially, for having fulfilled all requirements for requesting issuance of a temporary injunction – namely *fumus boni iuris* and *periculum in mora* – the Plaintiff hereby requests Your Honor to grant, *in limine* and *inaudita altera parte*, said temporary injunction, being the Plaintiff appointed depositary of the assets described in item c, above, and the Defendant appointed depositary of the remaining assets. The female spouse further requests attachment of any other property held by the male spouse eventually discovered during the present suit.

45. Should Your Honor find it essential to schedule a preliminary hearing before granting the injunction hereby requested, the Plaintiff expresses her willingness to comply.

46. Furthermore, a request is made towards informing the Defendant that he must not dispose of the assets deposited with him without total and express consent of this Court, and that he must not burden, encumber, or transfer, in any way, the assets that compose the couple's common property.

47. Finally, the Plaintiff respectfully requests Your Honor to order subpoenaing the Defendant for, if willing to do so and subject to a non-appearance penalty, contesting the present motion, which shall be granted provision, definitely granting the requested temporary injunction, having the Defendant the burden of payment of the court costs and expenses, as well the attorneys' fees.

48. Moreover, the Plaintiff pleads with this Court to allow the Process Server to proceed in conformity with the provision contained in Section 172, § 2 of the Civil Procedural Code.

49. The Plaintiff pledges and is willing to prove her claim through all admissible lawful ways, including the personal testimony of the Defendant, witness testimonies, filing of documents, requests for information, examinations, investigations, etc.




Tradução n.° 285                    Livro n.° 003                    Fl. n.° 070

**PRISCILA M. P. CORRÊA IDA FONSECA**                                    [15]
ATTORNEY-AT-LAW

    50. However, the Plaintiff respectfully requests Your Honor to immediately determine the emergent issuance of the following notices:

a) To the **Delegacia da Receita Federal** [the Brazilian equivalent to Internal Revenue Service] ordering the agency to provide to this Court a copy of the 3 most recent income returns filed by the Defendant (CPF [Individual Taxpayer #] 011.184.128-34).

b) to the following banks: **SAFRA, ITAU, HSBC and LEHMAN BROTHERS:** ordering them to inform whether they carry current or investments accounts, shares and/or funds of any nature, in Brazil or abroad, in the name of the Defendant (CPF # 011.184.128-34) and of **"STARKMAN INVESTEMENTS LTD."** and **"DOLL INVESTMENTS LTD.",** to freeze the account funds, and to produce the bank statements of said accounts and/or investments from September 20, 2002, date of the wedding, to the present date.

c) to the **SAO PAULO STOCK EXCHANGE,** ordering them to provide information about shares and investments of any nature, if any, in the name of the Defendant (CPF # 011.184.128-34) and of **"STARKMAN INVESTEMENTS LTD."** and **"DOLL INVESTMENTS LTD.",** also ordering the Stock Exchange to freeze such shares and/or investments, if any.

    50. [sic] For tax purposes, the present action is given the value of R$ 100,000.00 (one hundred thousand reals), a sum which the Plaintiff pledges to be allowed ratification as soon as there is determination of the exact dimension of the property object of the partition in the principal suit.

    Respectfully submitted.

    Sao Paulo. May 23, 2005.
    [illegible signature]
    Priscilla M. P. Corrêa da Fonseca
    [illegible signture]
    Carolina Scatena do Valle

AV. MAJOR SYLVIO DE MAGALHÃES PADILHA, 5200 - ED. QUEBEC - CJ 401
05693-000 SÃO PAULO - SP - TEL.: 3758-2345 - FAX: 3755-0077

[Translator's note: All pages of the document have been initialed on the top right-hand side.]
**************************************************************************************
***NOTHING ELSE*** contained the above document, which I return together with this full translation n. 285, book n. 3, pages 057 to 070.

***IN WITNESS THEREOF*** I have hereunto set my hand in this capital city of:
**************************************************************************************

Fees: R$ 903,00
Receipt n. : 092/2007

São Paulo, ___ de ____ de ___
[signature]
RITA DE CASSIA ___
Tradutora Juramentada e Intérprete Comercial Inglês - Portug. ___
Matriculada na JUCESP sob n° 1618

# Bettamio Vivone
Advogados Associados

**ANEXO/QUESITOS**

1. Qual sua função no Banco HSBC?
2. Há quantos anos o Sr. trabalha nessa instituição?
3. É verdade que o Sr. Hélio Hodara mantém ou manteve por anos conta no HSBC?
4. Desde quando?
5. O Sr. é ou era gerente das contas do Sr. Hodara?
6. É verdade que essas contas são ou eram controladas pelo Sr. Hodara? (Doc. 01 ao 06)
7. É verdade que nenhuma outra pessoa tinha o controle dessas contas? (Doc. 07 ao 14)
8. É verdade que todos os depósitos que o Sr. Hodara fez nessas contas foram através do Banco Central do Brasil como exige a legislação brasileira?
9. O Sr. sabe dizer se essas movimentações sem a autorização do Banco Central do Brasil são ilegais?
10. O HSBC possui algum documento dessas transferências autorizadas pelo Banco Central do Brasil ou sistema financeiro?
11. É verdade que quando o banco recebeu uma ordem da Justiça Brasileira, para que fossem bloqueados 50% do numerários existente nas contas movimentadas pelo Sr. Hélio, foram bloqueadas as contas correntes de titularidade da Starkman, da Finvestors e da Doll? (Doc. 15 ao 23)
12. É verdade que os 50% que não foram congelados o Sr. Hodara rapidamente transferiu para uma outra conta aberta em nome de suas filhas? (Doc. 24 ao 28)
13. É verdade que após o desbloqueio desse numerário o Sr. Hélio procedeu a transferência para contas de titularidade de suas filhas Andréa e Débora Hodara? (Doc. 24 ao 88)
14. É verdade que o Sr. se comunica ou se comunicava com o Sr. Hodara muitas vezes semanalmente para tratar de movimentações e aplicações financeiras Doll, Starkamn e Finvestors?

Av. Paulista, 509 • 9º and • Cjs. 907/914 • CEP 01311-000 • São Paulo • SP
Tels.: (11) 3284-2577 • 3284-6227 • 3289-7531 (direto) • Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

1

35 of 49



# Bettamio Vivone
Advogados Associados

15. É verdade que o Sr. mandava documentos das contas Doll, Starkaman e Finvestors para o Sr. Hodara assinar autorizando movimentações e aplicações financerias?

16. É verdade que o Sr. Hodara mandava para o Sr. por fax essas autorizações assinadas por ele mesmo?

17. O Sr. conhece este documento aqui apresentado como uma autorização de aplicação financeira assinada pelo Sr. Hodara? (Doc. 89/90)

18. É verdade que este documento se refere a aplicações da Doll?

19. É verdade que a Doll é uma empresa da Cayman Island e administrada pelo HSBC de Guernsey pelo departamento de Trust?

20. É verdade que a Doll é um Trust?

21. Quando as contas foram congeladas porque a Doll não apareceu na Corte para se defender? (Doc. 01 ao 06)

22. O Sr. pode explicar porque o HSBC Trust Bank nunca mandou seus representantes se defenderem?

23. É verdade eu o HSBC Truste decidiu não se manifestar para não correr o risco de ter que revelar os termos do Truste que o Sr. Hodara é o único criador? (Doc. 01 ao 06)

24. É verdade que o Sr. Hodara se encontra ou se encontrava com o senhor algumas vezes por ano no Brasil para tratar assuntos referentes as contas Doll, Starkman e Finvestors?

25. É verdade que o Sr. Hodara faz ou fazia transferências frequentes dessas contas para contas de terceiros? (Doc. 24 ao 28)

26. É verdade que as faturas do American Express em nome do Sr. Hodara são ou eram debitadas das contas Doll, Starkaman ou Finverstors?

27. É verdade que as faturas do American Express em nome de Deborah Hodara são ou eram debitados das contas Doll, Starkman ou Finverstors? (fls. 124 dos autos)

28. O Senhor pode dizer a origem dos fundos da conta Doll?

29. É verdade que o Sr. Hodara possuía outras contas em nome de diferentes off shores que antecederam a conta Doll?

2

Av. Paulista, 509 • 9° and • Cjs. 907/914 • CEP 01311-000 • São Paulo • SP
Tels.: (11) 3284-2577 • 3284-6227 • 3289-7531 (direto) • Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

# Bettamio Vivone
Advogados Associados

30. É verdade que essas outras contas deram origem a conta Doll?

31. Quem são os beneficiários das conta do Sr. Hodara?

32. O Sr. tem conhecimento das atividades comerciais dessas companhias?

33. O Sr. confirma que a Doll foi criada em Cayman Island e é ou era administrada pelo HSBC Trustee?

34. O Sr. faz ou fazia contatos com a Sra. Jane Salmon para tratar de assuntos da conta da Doll e seu Trustee?

35. Quem são ou eram os beneficiários desse Trust?

36. Quem possui ou possuía procuração nas contas Doll, Starkman e Finvestors?

37. O Sr. pode explicar porque o HSBC congelou as contas do Sr. Hodara, Doll, Starkman e Finvestors? (Doc. 07 ao 14)

38. Quem assina ou assinava os documentos dessas contas e como eram processados?

39. O Sr. conhece alguma outra pessoa que se responsabiliza ou responsabilizava por essas empresas e contas?

40. É verdade que o HSBC contratou os serviços da Holland + Knight para defender os interesses do Sr. Hodara junto a Corte de Miami? (Doc. 01 ao 06)

41. O Sr. sabe porque a Holland + Knight preferiu não se defender no congelamento da conta Doll na Corte, conforme carta em anexo? (Doc. 01 ao 06)

42. Não é verdade que a Holland + Knight preferiu não comparecer à corte para não ter que revelar o Trust Doll? (Doc. 01 ao 06)

43. É verdade que o Sr. Hodara é a única pessoa que assina ou assinava os documentos de transferências e investimentos da Doll, Starkman e Finvestors?

44. A quem o Sr. se dirigia ou se dirige para tratar de assuntos referente a essas contas?

45. O Sr. sabe explicar porque apenas o Sr. Hodara compareceu na Corte Americana para se defender do congelamento das contas?

3

# Bettamio Vivone

### Advogados Associados

46. Ainda que o Trust Doll passa não mais existir o Senhor concorda que uma cópia do mesmo encontra-se em poder do HSBC?

47. Quem é ou era responsável pela guarda do certificado de ações dessas companhias?

48. O Sr. Hodara continua sendo cliente do HSBC de Miami?

49. As contas Doll, Starkman e Finvestors que foram congeladas em 2005 permanecem sob os mesmos títulos e no mesmo banco?

50. O Sr. Hodara efetuou transferência dessas contas para outros bancos logo após o descongelamento das mesmas? (Doc. 24 ao 28)

51. É verdade que foi o Sr. Hodara que autorizou essas transferências?

52. O Sr. pode afirmar que a Doll, Starkman e Finvestors não mais possuem contas no HSBC?

53. O Sr. efetuou transferências dessas contas para o Banco Lehman Brothers?

54. É verdade que foi o Sr. Hodara que autorizou essas transferências?

55. O Sr. fez alguma transferência dessas contas para o HSBC de Guernsey?

56. O Sr. participou quando o HSBC Guernsey transferiu os valores para o Banco UBS na Alemanha?

57. Quando esses valores foram transferidos as contas para qual foram possuíam o título Doll ou Starkman ou Finvestors?

58. Quando as transferências foram efetuadas pelo HSBC através de cheques administrativos aparecia no nome do Sr. Hodara ou das companhias?

59. O Sr. tem conhecimento de uma companhia criada pelo Sr. Hodara chamada NIXUS?

60. É verdade que o Sr. Hodara solicitou ao HSBC que essas transferências fossem feitas através de cheques administrativos (cashiers cheks) para não deixar vestígios da Doll e Finvestors?

61. O Sr. concorda que a Doll possuía US$ 25 milhões de dólares depositados no HSBC?

62. O Sr. concorda que a Finvestors possuía US$ 5 milhões de dólares depositados no HSBC? (Doc. 92 ao 108)

**4**

Av. Paulista, 509 • 9º and • Cjs. 907/914 • CEP 01311-000 • São Paulo • SP
Tels.: (11) 3284-2577 • 3284-6227 • 3289-7531 (direto) • Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

# Bettamio Vivone

Advogados Associados

63. Por solicitação do Sr. Hodara o Sr. transferiu cerca de US$ 10 milhões de dólares para uma conta chamada Finvestors no banco Lehman Brothers?

64. O Sr. conhece Elizabeth Hodara?

65. O Sr. conhece as filhas do Sr. Hodara? (Doc. 109/110)

66. É verdade que o Sr. Hodara abriu uma conta no HSBC para a filha Débora Hodara em substituição de parte dos valores que pertenciam a conta Finvestors após o descongelamento da mesma? (Doc. 29 ao 88)

67. O Sr. Hodara possuía uma conta chamada Starkman?

68. É verdade que essa conta Starkman foi encerrada por volta de abril de 2005?

69. O Sr. concorda que a conta Finvestors foi aberta com o capital advindo da conta Starkman?

70. O Sr. fez alguma transferência da conta Starkman para o banco Lehman Brothers?

71. O sr. Hodara mantinha contatos telefônicos para tratar de assuntos referentes a essas contas com o senhor?

72. Alguma vez o Sr. falou com outro representante dessas empresas?

73. Existe algum documento dessas empresas que conste algum outro representante que não seja o Sr. Hodara ou suas filhas?

74. O Sr. manteve contato com o Sr. Uwe Niederberger no UBS da Alemanha sobre as transferências das contas Doll e Finvestors?

75. Qual foi a participação da Sra. Jane Salmon do HSBC de Guernsey nessas transferências?

76. O Sr. participou da abertura de um investimento no OMNIA TRUST em Bermuda feio pelo Sr. Hodara?

77. Qual foi o valor desse investimento?

78. É verdade que ao Sr. Hodara decidiu encerrar suas contas e transações no HSBC de Miami?

79. O Sr. participou quando o Sr. Hodara criou o Trust Doll?

80. Quem foi o único criador do Trust Doll?

Av. Paulista, 509 • 9º and • Cjs. 907/914 • CEP 01311-000 • São Paulo • SP
Tels.: (11) 3284-2577 • 3284-6227 • 3289-7531 (direto) • Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

# Bettamio Vivone

### Advogados Associados

81. É verdade que o criador é aquele que possui os valores para constituir o Trust?

82. Qual foi a finalidade da criação desse Trust?

83. Porque o Sr. Hodara determinou que o HSBC Trustee seria o fiel administrador de seus bens?

84. O Sr. conhece a companhia ETON MANNAGEMENT LTD.?

85. O Sr. concorda que o HSBC é o criador dessa companhia?

86. O Trust Doll utilizou a ETON MANNAGEMENT para aparecer como seu único diretor? O Sr. pode explicar porque o HSBC usa esse recurso?

87. É verdade que o HSBC pagava através de suas contas os cartões de crédito do Sr. Hodara?

88. É verdade que essas contas se responsabilizavam pelo pagamento dos cartões de crédito de outras pessoas?

89. Os diretores dessas companhias possuíam cartões de crédito pagos através das contas Doll, Starkman e Finvestors?

90. O Sr. alguma vez falou com alguma outra pessoas dessa empresas que não fosse o Sr. Hodara?

91. Quem?

92. O Sr. Hodara possuía junto ao HSBC um outro Trust ante do Trust Doll?

93. Esse Trust era revogável?

94. Quais eram as especificações do Sr. Hodara na carta de desejos do Trust?

95. O Sr. possui ou possuía o cartão de assinaturas da conta Doll?

96. O Sr. pode revelar a essa Corte o nome das pessoas que assinaram esse cartão?

97. O Sr. conhece pessoalmente os beneficiários do Trust Doll?

98. Sendo as beneficiárias desse Trust as filhas do Sr. Hodara, Déborah e Andréa, esse Trust teria sido criado para proteger o patrimônio da família?

99. O Sr. sabe que contas de brasileiros no exterior que não são declaradas junto ao Banco Central do Brasil são consideradas ilegais pelas leis brasileiras?

**6**

# Bettamio Vivone
Advogados Associados

100. É verdade que as empresas off shores são utilizadas também para mascarar o nome de uma pessoa física e assim ela conseguir burlar o fisco?

101. É verdade que nenhuma das empresas do Sr. Hodara tem registro no Brasil?

102. É verdade que o Sr. Hélio já possuiu imóveis em Miaim?

103. É verdade que também foi pedido o congelamento de 50% da empresa PRO TERRA em 2005?

104. É verdade que os criadores dessa empresa eram o Sr. Hélio Hodara, o Sr. Nelson Hodara e a Sra. Estela Hodara?

105. É verdade que o Sr. Hodara possui outras filhas legítimas que não são suas beneficiárias?

106. O Sr. conhece alguma delas?

107. O Sr. sabe que o Sr. Hodara preocupava-se em proteger seu patrimônio dessas duas outras filhas?

108. O Sr. conhece pessoalmente alguma pessoa da família do Sr. Hodara?

109. O Sr. conhece o Sr. Nelson Hodara?

110. O Sr. conhece a Sra. Estela Hodara?

111. O Sr. conhece a filha Patricya Hodara?

112. O Sr. conhece a filha Roberta Hodara?

113. É verdade que as empresas Doll, Starkman e Finvestors tiveram 50% dos seus valores congelados pois eram empresas do Sr. Hodara?

114. O Sr. manteve contato com a Sra. Tatiana Okuma que era funcionária do Banco UBS e que hoje trabalha no Royal Bank Of Canada?

115. É verdade que a Sra. Tatiana Okuma cuidou das transferências que o HSBC efetuou para o UBS de Hamburgo?

**7**

Av. Paulista, 509 • 9° and • Cjs. 907/914 • CEP 01311-000 • São Paulo • SP
Tels.: (11) 3284-2577 • 3284-6227 • 3289-7531 (direto) • Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

| Tradução n.º 284 | Livro n.º 003 | Fl. n.º 050 |

[1028]

# Bettamio Vivone
### Advogados Associados

## Appendix / Questions

1.  What is your role at HSBC Bank?

2.  How long have you worked for them?

3.  Is it true Mr. Hélio Hodara maintains or has maintained an account at HSBC for years?

4.  Since when?

5.  Are you or were you the manager responsible for Mr. Hodara's accounts?

6.  Is it true these accounts are or were controlled by Mr. Hodara (Documents 01 to 06)

7.  Is it true no one else had control over these accounts? (Documents 07 to 14)

8.  Is it true all deposits made by Mr. Hodara into these accounts were made through the Brazilian Central Bank as required by Brazilian legislation?

9.  Do you know whether it is illegal to make such transactions without authorization of the Brazilian Central Bank?

10. Does HSBC have any record proving that the Brazilian Central Bank authorized the deposits?

11. Is it true that when HSBC was ordered by the Brazilian Court to freeze 50% of the funds held in the accounts controlled by Mr. Hodara, HSBC froze the current accounts held in the names of Starkman, Finvestors and Doll? (Doc. 15 to 23).

12. Is it true that Mr. Hodara immediately transferred the 50% that had not been frozen to other accounts opened in the name of his daughters? (Doc. 24 to 28)

13. Is it true that, after the freeze on the accounts was lifted, Mr. Hodara transferred the funds to the accounts held by his daughters Andréa and Débora Hodara? (Doc. 24 to 88)

14. Is it true that you talk or talked to Mr. Hodara many times a week about Doll, Starkman and Finvestors' transactions and investments?



Av. Paulista, 509 – 9º and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

1

Tradução n. º 284      Livro n.º 003      Fl. n.º 051

[1029]

# Bettamio Vivone
Advogados Associados

15. Is it true that, on various occasions, you sent documents related to the Doll, Starkman and Finvestors accounts for Mr. Hodara to sign authorizing financial transactions and investments?

16. Is it true Mr. Hodara would fax you the authorizations signed by himself?

17. Do you recognize this document as a financial investment authorization signed by Mr. Hodara? (Doc. 89/90)

18. Is it true this document is related to investments held by Doll?

19. Is it true Doll is a company incorporated in the Cayman Islands and managed by HSBC Guernsey's Trust Department?

20. Is it true Doll is a trust?

21. Why did Doll fail to appear in court to defend itself when the accounts were frozen? (Doc. 01 to 06)

22. Can you explain why HSBC Trust Bank never sent its attorneys to defend themselves?

23. Is it true HSBC Trust decided not to appear in court for fear of having to disclose the terms of the trust identifying Mr. Hodara as its single settlor? (Doc. 01 to 06)

24. Is it true Mr. Hodara meets or would meet with you in Brazil from time to time to talk about the accounts held in the names of Doll, Starkman and Finvestors?

25. Is it true Mr. Hodara makes or would make frequent transfers from these accounts into accounts held by third parties? (Doc. 24 to 28)

26. Is it true Mr. Hodara's American Express card bills are or were debited out of the accounts held by Doll, Starkman or Finvestors?

27. Is it true Ms. Deborah Hodara's American Express card bills are or were debited out of the accounts held by Doll, Starkman or Finvestors? (page 124 of the court records).

28. Can tell us the origin of the funds in the Doll account?

29. Is it true Mr. Hodara had other accounts held by different off-shore companies before opening the Doll account?



Av. Paulista, 509 – 9° and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

2

Tradução n. º 284          Livro n.º 003          Fl. n.º 052

[1030]

# Bettamio Vivone
#### Advogados Associados

30.   Is it true the Doll account originated from these other accounts?

31.   Who are Mr. Hodara's account beneficiaries?

32.   Do you know what kind of activities these companies are engaged in?

33.   Do you confirm Doll was incorporated in the Cayman Island, and that HSBC was its trustee?

34.   Do you or did you have contact with a Ms. Jane Salmon to talk about matters related to the Doll account and its trustee?

35.   Who are or were the trust's beneficiaries?

36.   Who holds or held a power-of-attorney to carry out transactions in the accounts held by Doll, Starkman and Finvestors?

37.   Can you explain why HSBC froze the accounts held by Mr. Hodara, Doll, Starkman and Finvestors? (Doc. 07 to 14)

38.   Who signs or signed these accounts' documents and how were they processed?

39.   Do you know anyone else who represents or represented these companies and accounts?

40.   Is it true HSBC hired the services of Holland + Knight to defend Mr. Hodara's interests before the Miami Court? (Doc. 01 to 06)

41.   Do you know why Holland + Knight decided not to appear in court in the matter related to the freeze on the Doll account, according to the attached letter? (Doc 01 to 06)

42.   Is it true Holland + Knight decided not to appear in court for fear of having to disclose the Doll Trust? (Doc. 01 to 06)

43.   Is it true Mr. Hodara is the only person who signs or signed the transfer and investment documents related to the accounts held by Doll, Starkman and Finvestors?

44.   Who do you or did you talk to about matters related to these accounts?

45.   Can you explain why Mr. Hodara was the only person to appear before the American Court to defend himself in respect of the freeze on the accounts?



Av. Paulista, 509 – 9° and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

3

| Tradução n. ° 284 | Livro n.º 003 | Fl. n.º 053 |

[1031]

# Bettamio Vivone
### Advogados Associados

46. Although the Doll Trust ceases to exists, do you confirm HSBC has a copy of the trust deed?

47. Who is or was responsible for keeping these companies' share certificates?

48. Does Mr. Hodara still hold an account with HSBC Miami?

49. Do the accounts held by Doll, Starkman and Finvestors, frozen in 2005, remain under the same name and in the same bank?

50. Did Mr. Hodara transfer the funds in these accounts to another bank soon after the freeze on the accounts was lifted? (Doc. 24 to 28)

51. Is it true Mr. Hodara himself authorized the transfers?

52. Can you confirm Doll, Starkman and Finvestors no longer hold accounts at HSBC?

53. Did you transfer these accounts to Lehman Brothers Bank?

54. Is it true Mr. Hodara authorized these transfers?

55. Did you transfer these accounts to HSBC Guernsey?

56. Did you take part in HSBC Guernsey's transfer of the funds to UBS Bank in Germany?

57. Were the funds transferred to accounts having Doll, Starkman or Finvestors as account holders?

58. When the transfers were carried out by HSBC using cashier's checks, did Mr. Hodara's name or the companies' names appear on the checks?

59. Do you know a company called NIXUS and set up by Mr. Hodara?

60. Is it true Mr. Hodara instructed HSBC to make the transfers through cashier's checks to prevent them from being traced back to Doll and Finvestors?

61. Do you confirm that the funds in the Doll account at HSBC amounted to US$ 25 million?

62. Do you confirm that the funds in the Finvestors account at HSBC amounted to US$ 5 million? (Doc. 92 to 108)



Av. Paulista, 509 – 9° and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

4

| Tradução n. ° 284 | Livro n.° 003 | Fl. n.° 054 |
|---|---|---|

[1032]

# Bettamio Vivone
Advogados Associados

63.  Did Mr. Hodara instruct you to transfer around US$ 10 million to an account in the name of Finvestors with Lehman Brothers Bank?

64.  Have you met Elizabeth Hodara?

65.  Have you met Mr. Hodara's daughters? (Doc. 109/110)

66.  Is it true Mr. Hodara opened an account with HSBC for his daughter Débora Hodara to replace part of the funds deposited in the Finvestors account after the freeze was lifted? (Doc. 29 to 88)

67.  Did Mr. Hodara have an account called Starkman?

68.  Is it true this Starkman account was closed in April 2005?

69.  Do you confirm that the Finvestors account was opened with capital originated from the Starkman account?

70.  Did you transfer any funds from the Starkman account to the Lehman Brothers Bank?

71.  Did Mr. Hodara contact you by telephone from time to time to talk about matters related to these accounts?

72.  Did you at any time speak to any other person representing these companies?

73.  Do any documents related to these companies bear the names of representatives other than Mr. Hodara or his daughters?

74.  Did you have contact with Mr. Uwe Niederberger from UBS Germany about the transfers from the Doll and Finvestors accounts?

75.  What was the role played by Ms. Jane Salmon from HSBC Guernsey in respect of these transfers?

76.  Did you take any part in the investment made Mr. Hodara in the OMNIA TRUST in Bermuda, ?

77.  How much was invested?

78.  Is it true Mr. Hodara decided to close his accounts and investments with HSBC Miami?

79.  Did you take any part in the creation of the Doll Trust by Mr. Hodara?

80.  Who was the single settlor of the Doll Trust?

Av. Paulista, 509 – 9° and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

5



[1033]

# Bettamio Vivone
#### Advogados Associados

81.   Is it true the settlor is the person who owns the funds used to set up the trust?

82.   Why was this trust created?

83.   Why did Mr. Hodara choose HSBC as its assets trustee?

84.   Do you know a company that goes by the name ETON MANAGEMENT LTD.?

85.   Do you confirm it was HSBC which created this company?

86.   Did the Doll Trust use ETON MANAGEMENT to feature as its sole director? Can you explain why HSBC does that?

87.   Is it true HSBC used its accounts to pay for Mr. Hodara's credit card bills?

88.   Is it true these accounts were also used to pay other people's credit card bills?

89.   Did these companies' directors hold credit cards that were paid through the accounts held by Doll, Starkman and Finvestors?

90.   Did you ever talk to anyone who represented these companies other than Mr. Hodara?

91.   Who?

92.   Did Mr. Hodara create another trust before the Doll Trust was created?

93.   Was this trust revocable?

94.   What were Mr. Hodara's specifications in the trust deed?

95.   Do you or did you maintain the signature card of the Doll account?

96.   Can you disclose to this Court the names of the people who signed the card?

97.   Have you personally met the beneficiaries of the Doll Trust?

98.   Considering this trust's beneficiaries are Mr. Hodara's daughters Déborah and Andréa, could this trust have been created to protect the family's property?

99.   Did you know it is illegal for Brazilian citizens to hold accounts abroad when they do not inform the Brazilian Central Bank about the existence of the accounts?

6



| Tradução n. º 284 | Livro n.º 003 | Fl. n.º 056 |

[1034]

# Bettamio Vivone
### Advogados Associados

100. Is it true that some off-shore companies are used to hide an individual's name, helping him evade taxes?

101. Is it true none of the companies owned by Mr. Hodara are registered in Brazil?

102. Is it true Mr. Hodara owns real state in Miami?

103. Is it true a freeze was imposed on 50% of the funds owned by a company called PRO TERRA in 2005?

104. Is it true this company was founded by Mr. Helio Hodara, Mr. Nelson Hodara and Ms. Estela Hodara?

105. Is it true Mr. Hodara has other legitimate daughters who are not his beneficiaries?

106. Have you met any of them?

107. Did you know Mr. Hodara was trying to protect his property against these two other daughters?

108. Have you personally met anyone related to Mr. Hodara?

109. Have you met Mr. Nelson Hodara?

110. Have you met Ms. Estela Hodara?

111. Have you met Patrycya Hodara, Mr. Hodara's daughter?

112. Have you met Roberta Hodara, Mr. Hodara's daughter?

113. Is it true the accounts held by Doll, Starkman and Finvestors were frozen because they were owned by Mr. Hodara?

114. Have you met Ms. Tatiana Okuma, who used to work for UBS Bank, but now works for Royal Bank of Canada?

115. Is it true Ms. Okuma was in charge of the transfers made from HSBC to UBS Hamburg?

116.

Av. Paulista, 509 – 9° and – Cjs. 907/914 – CEP 01311-000 – São Paulo – SP
Phones: (11) 3284-2577 – 3284-6227 – 3289-7531 (direct) – Fax: (11) 3289-4447
e-mail: bettamiovivone@bettamiovivone.adv.br

7

[Translator's note: All pages containing questions were initialed on the upper right hand corner]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

***NOTHING ELSE*** contained the above document, which I return together with this full translation n. 284, book n. 3, pages 046 to 056.

***IN WITNESS THEREOF*** I have hereunto set my hand in this capital city of:
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Fees: R$ 56,00          São Paulo, 14 de Maio de 07
Receipt n. : 092/2007

RITA DE CASSIA TEIXEIRA
Tradutora Juramentada e Intérprete Comercial Inglês - Português
Matriculada na JUCESP sob n° 1618

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

In Re: Request for International Judicial Assistance from 11th Family & Probate Division of the Central District Court of Sao Paulo, Brazil; Matter of Mr. James Smith, c/o HSBC International Bank, Miami, FL

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

United States Attorney's Office
Wendy A. Jacobus, AUSA
99 NE 4th Street, 3rd Floor, Miami, FL 33132          305-961-9301

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☒ DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*Miami-08 MC 21005 PAS/O Sullivan*

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product / Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & / Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability / Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine / **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ / **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment / ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  |  |  |

FILED by ___ D C
INTAKE
APR 14 2008
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 USC § 1782 (FOREIGN JUDICIAL ASSISTANCE)

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   03/27/2008   4/14/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

49 of 49